# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

ANNA MAY RICHTER,

        Plaintiff,

vs.

BEN SMITH in his individual capacity as
Sac County Attorney,

        Defendant.

No.  C16-4098-LTS

**MEMORANDUM OPINION
AND ORDER ON MOTION FOR
JUDGMENT ON THE PLEADINGS**

_____

## I.    INTRODUCTION

This matter is before me on defendant Ben Smith's motion (Doc. No. 28) for judgment on the pleadings.  Plaintiff Anna Richter has filed a resistance (Doc. No. 29) and Smith has replied (Doc. No. 32).  Oral argument is not necessary.  *See* N.D. Iowa L.R. 7(c).

## II.    PROCEDURAL HISTORY

Richter commenced this action on July 7, 2016, by filing a complaint and jury demand (Doc. No. 3).  She filed an amended complaint (Doc. No. 6) on August 5, 2016.  Smith is named as a defendant in his individual capacity as the elected County Attorney of Sac County, Iowa.  Doc. No. 6 at 1.

In general terms, Richter alleges that Smith has violated her constitutional rights by misusing his powers as a prosecutor to punish her for speech that is critical of him.  Specifically, Richter contends that she is the mother of Tracey Richter (Tracey), who Smith prosecuted for murder in Sac County, Iowa, in 2011.[1]  *Id.* at ¶¶ 25-26.  After

_____

[1] Tracey was convicted of first degree murder for the December 13, 2001, death of Dustin Wehde.  For a summary of the case, *see State v. Richter*, No. 11-2124, 2013 WL 118357, at

Tracey's conviction, Richter and others posted criticisms about the prosecution online using the "Ripoff Report" website. *Id*. at ¶¶ 44-46. Richter alleges that Smith, who had garnered national attention for his role in the case, was apparently angered by this criticism and used his position to commence an unlawful investigation against Richter and others. As a result, Richter alleges the following constitutional violations and torts:

> Count I – First Amendment Retaliation (First, Fourth and Fourteenth Amendments, 42 U.S.C. § 1983)
>
> Count II – Abuse of Process (Fourteenth Amendment, 42 U.S.C. § 1983)
>
> Count III – Malicious Prosecution/Wrongful Institution of Civil Proceedings (Iowa law)
>
> Count IV – Invasion of Privacy (Iowa law)

*Id*. Richter seeks declaratory and injunctive relief, compensatory damages, punitive damages, interest, attorney fees and costs. *Id*. at 11. Smith answered the amended complaint on July 17, 2018, *see* Doc. No. 27, and now seeks dismissal pursuant to Federal Rule of Civil Procedure 12(c).[2] Trial is scheduled to begin February 19, 2019.

Meanwhile, others involved in the Ripoff Report coverage of Tracey's case have sued Smith for his alleged retaliatory actions against them. In *Xcentric Ventures, LLC et al. v. Smith*, 15-cv-4008-LTS (N.D. Iowa), as a United States Magistrate Judge, I filed a Report and Recommendation (15-cv-4008 at Doc. No. 55) recommending that the District Court Judge grant the plaintiffs' motion for a preliminary injunction preventing Smith from continuing to investigate in retaliation for plaintiffs' exercise of their First Amendment rights. The parties to the *Xcentric* case entered a confidential settlement

---

*1-3 (Iowa Ct. App. 2013). Tracey's conviction was affirmed on appeal, *id*., and her state post-conviction relief petition was denied. *Richter v. State*, No. 15-1800, 2017 WL 935064 (Iowa Ct. App. Mar. 8, 2017). She presently has a habeas corpus petition under 28 U.S.C. § 2254 pending in this court. *See Richter v. Dahm*, 18-CR-4017-LTS (N.D. Iowa).

[2] Smith filed an answer (Doc. No. 7) on August 9, 2016, which was designated as an answer to the original complaint. This is understandable, as Richter had filed her amended complaint just four days earlier and Smith had not yet appeared in the case.

agreement, and the case was dismissed on June 16, 2017. *Id.* at Doc. No. 155. Another case involving an alleged Ripoff Report employee, Darren Meade, is scheduled for trial in April 2020. *Meade v. Smith*, 17-cv-4034-LTS (N.D. Iowa) (Amended Trial Scheduling Order at Doc. No. 28).

## III. APPLICABLE STANDARDS

### A. Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A Rule 12(c) motion is reviewed under the same standard that governs rule 12(b)(6) motions to dismiss for failure to state a claim. *Westcott v. City of Omaha*, 901 F2d 1486, 1488 (8th Cir. 1990).

The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim under Rule 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the pleading standard Rule 8 announces but does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.* at 555. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Id.* Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. *Id.* at 557.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (cleaned up) .

Courts assess "plausibility" by "'draw[ing] on [our own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Courts "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Id.* (citation omitted). While *factual* plausibility is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *accord Target Training Int'l, Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

## B.    *Immunities*

The existence of an immunity is one basis for granting a motion to dismiss under Rule 12(c). Smith claims that he is entitled to absolute prosecutorial immunity and qualified immunity against most of the allegations in this case.

### 1.    *Absolute Immunity*

The United States Supreme Court has made it clear that prosecutors are absolutely immune from damage liability in a suit for conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (prosecutors are absolutely immune from liability under § 1983 for their conduct in "initiating a prosecution and in presenting the State's case"); *see also Kalina v. Fletcher*, 522 U.S. 118, 128-29 (1997) (prosecutors have absolute immunity for conduct in the preparation and filing of a motion for an arrest warrant unless he acts as a witness); *Burns v. Reed*, 500 U.S. 478, 493 (1991) (prosecutors are not entitled to immunity for administrative or investigative functions normally performed by a police officer); *Williams v. Hartje*, 827 F.2d 1203, 1209 (8th Cir. 1987) ("The decision of a prosecutor to file criminal charges is within the set of core functions which is protected by absolute immunity. This is so even if the prosecutor makes that decision in a consciously malicious

manner, or vindictively, or without adequate investigation, or in excess of his jurisdiction." (citation omitted)).

Whether prosecutorial conduct is "intimately associated with the judicial phase of the criminal process" requires "a focus[] on the conduct for which immunity is claimed, not the harm that the conduct may have caused or the question whether it was lawful." *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993). In *Buckley*, the Supreme Court divided the functions of the prosecutor as follows:

> [In *Imbler*,] [w]e expressly stated that "the duties of the prosecutor in his role as advocated for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," and are nonetheless entitled to absolute immunity. We noted in particular that an out-of-court "effort to control the presentation of [a] witness' testimony" was entitled to absolute immunity because it was "fairly within [the prosecutor's] function as an advocate." 424 U.S. at 430 n.32. To be sure, *Burns* made explicit the point we had reserved in *Imbler*: A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. *See Burns*, 500 U.S. at 494-96. We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.
>
> On the other hand, as the function test of *Imbler* recognizes, the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity "represents the norm" for executive officers. *Malley v. Briggs*, 475 U.S. at 34, so when a prosecutor "functions as an administrator rather than as an officer of the court" he is entitled only to qualified immunity. *Imbler*, 424 U.S. at 431, n.33. There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs investigative functions normally performed by a detective or police officer, it is "neither appropriate nor

justifiable that, for the same act, immunity should protect the one and not the other." *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973), *cert. denied* 415 U.S. 917 (1974). Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction." *Id.* at 608-609.

509 U.S. at 273-74. Importantly, the "function" is evaluated from the time it is performed: "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation for a possible trial." *Id.* at 276. Where a prosecutor is not entitled to absolute immunity, qualified immunity analysis applies.

### 2. *Qualified Immunity*

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). The Eighth Circuit Court of Appeals has stated:

What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The Supreme Court has generously construed qualified immunity protection to shield "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

*Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004) (cleaned up). For the "clearly established" prong of the qualified immunity analysis,

A legal principle must have a sufficiently clear foundation in then-existing precedent. Normally this requires us – outside of an "obvious" constitutional violation – "to identify a case where an officer acting under

6

similar circumstances as the defendant was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). While the case need not be "directly on point, existing precedent must place the lawfulness of the particular act beyond debate." *Wesby*, 138 S. Ct. at 590.

*Johnson v. City of Minneapolis*, 901 F.3d 963, 972 (8th Cir. 2018) (cleaned up).

Whether an officer is entitled to qualified immunity is a fact-dependent inquiry:

The first step in assessing the constitutionality of [defendant's] actions is to determine the relevant facts. As this case was decided on summary judgment, there have not yet been factual findings by a judge or jury, and respondent's version of events (unsurprisingly) differs substantially from [defendant's] version. When things are in such a posture, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. In qualified immunity cases, this usually means adopting the plaintiff's version of the facts.

*Scott v. Harris*, 550 U.S. 372, 377 (2007) (internal citations omitted).

## IV.  RELEVANT FACTS

The amended complaint (Doc. No. 6) includes the following allegations:

### A.  *The Parties*

Anna Richter is a citizen of the State of Iowa. *Id*. at ¶ 44. She is Tracey Richter's mother, and she believes her daughter to be innocent of the murder of Dustin Wehde. *Id*. at ¶¶ 45-46. Because of this, she has criticized Smith for his prosecution of her daughter and engaged in a campaign to share information about the trial with the public through a website called "Ripoff Report."

Ben Smith is the Sac County prosecutor. *Id*. at ¶ 16. After successfully prosecuting Tracey for murder, he commenced an extensive investigation of Tracey, Richter, Ripoff Report and others arising from various online postings. Smith contends that some statements and information posted online were targeted at the prosecution's

trial witnesses in such a manner as to constitute the offense of witness tampering in violation of Iowa law.

Although Richter and Smith are the only parties to *this* case, there are several other recurring characters. As discussed above, Tracey Richter and her murder trial are the subject of the online postings that Smith decided to investigate. Michael Roberts is Tracey's ex-husband. Id. at ¶ 20. They were married at the time of Tracey's crime in 2001 but had divorced by the time charges were brought in 2011. *Id.* at ¶¶ 24-27. Richter considers Roberts a suspect in the 2001 murder. Smith became friendly with Roberts during the course of Tracey's trial and testified on Roberts' behalf during a custody hearing after Tracey was convicted. *Id.* at ¶¶ 28, 47-51. Smith also consulted Roberts extensively during his investigation of Richter and Ripoff Report. *Id.* at ¶ 57. Ed Magedson is the founder of Ripoff Report and manages Xcentric Ventures, the owner of Ripoff Report. *Id.* at ¶ 29. Darren Meade created content for Ripoff Report and was a former business partner of Roberts. *Id.* at ¶¶40, 43. Magedson and Meade were also targets of Smith's investigation following Tracey's conviction.

## B.    *The Claims*

Richter alleges that after her daughter's conviction, Smith began a campaign to target and harass Richter using his powers as the Sac County prosecutor. Smith spent more than 1,500 hours[3] investigating Richter and others for posting criticisms about Tracey's trial. *Id.* at ¶ 52. During this investigation, Smith issued over 100 investigatory subpoenas, reviewed thousands of documents and listened to hundreds of hours of recorded phone conversations. *Id.* This investigation culminated in a 118-page, single-

---

[3] Although for the purposes of this motion I am accepting the factual allegations of the pleadings as true without corroboration, I note that Smith made this claim himself in the affidavit in support of a search warrant for Anna's home. I further note that 1,500 hours of work is the equivalent of working 40 hours per week for about 37 weeks (or nine months).

spaced affidavit in support of a search warrant for Richter's home. *Id.* at ¶ 53, *see also* Doc. No. 29-2 (the warrant application and affidavit).[4]

Although the purpose of this search warrant was ostensibly to seize electronic storage devices and email communications from Richter's home, the warrant covered a wide swath of information about various topics, including business dealings between the parties, Tracey's prior marriage and alleged criminal actions of third parties completely unconnected to Richter. *See, e.g.* Doc. No. 29-2 at 1-12 (the history of Tracey's first marriage), 15-17 (Meade's alleged involvement in an unrelated criminal enterprise), 17-24 (Robert's business dealings with Meade, Magedson and Ripoff Report). Smith shared drafts of the affidavit with third parties such as Roberts and others with an axe to grind against Ripoff Report and is alleged to have used substantial information provided by Roberts and others verbatim in drafting the affidavit. Doc. No. 6 at ¶¶ 56-57. Smith filed the affidavit without sealing it and it was shared online by Roberts and others. *Id.* at ¶ 56. Smith publicly threatened to file charges against Richter and actually filed charges against Meade and Xcentric. *Id.* at ¶¶ 59-61. As a result of Smith's actions, Richter alleges that her free speech has been chilled and that she has suffered considerable damage and harm.

## V.    *ANALYSIS*

Smith moves for partial dismissal of Richter's claims based on absolute and qualified immunity and for failure to state a claim under the 12(b)(6) standard. Specifically, Smith argues that he is entitled to qualified immunity on Counts I and II and

---

[4] On a motion to dismiss pursuant to Rule 12, the court ordinarily cannot consider matters outside of the pleadings, unless the court converts the Rule 12 motion into a motion for summary judgment pursuant to Rule 56. *See* Fed. R. Civ. P. 12(b)(6); *see also Buck v. F.D.I.C.*, 75 F.3d 1285, 1288 n.3 (8th Cir. 1996). However, I may consider documents embraced by the pleading (i.e., various court filings at issue) without converting the motion into a summary judgment motion. *See, e.g., Jenisio v. Ozark Airlines, Inc.,* 187 F.3d 970, 972 n.3 (8th Cir. 1999) (citing *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997)).

that Count III fails to state a claim.[5]  Smith further argues that he is entitled to absolute immunity for certain actions underlying each of Richter's claims.  Richter contends that Smith's motion is untimely and generally resists dismissal.  I will consider each of the parties' arguments.

## A.    *Timeliness*

Richter argues that Smith's motion for judgment on the pleadings is untimely because it was filed more than two years after Richter filed her amended complaint, and because it "appears aimed at avoiding discussion of numerous facts learned in discovery that are unfavorable to Defendant."  Doc. No. 29 at 4.  Richter asks that I "reject Defendant's attempt to artificially restrict the factual and legal issues to be evaluated by denying the 12(c) motion."  *Id.*

Although Richter's allegations regarding the strategy of filing a 12(c) motion rather than a motion for summary judgment may have merit, I find that the 12(c) motion was timely.  Rule 12(c) provides that a motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed – but early enough not to delay trial[.]"  Fed. R. Civ. P. 12(c).  Smith filed his motion before the dispositive motion deadline in this case.  At the time of filing, six months remained before the scheduled jury trial of this case.  Smith's filing fits within the parameters of Rule 12(c) and is not untimely.

## B.    *Count I*

In Count I, Richter alleges that Smith violated the First, Fourth and Fourteenth Amendments by retaliating against Richter for exercising her First Amendment right to criticize him.  This retaliation took the form of

> [a]dopting as [Smith's] own, without any fact checking, a search warrant affidavit drafted primarily by a third party with a personal vendetta

---

[5] Smith does not argue that Count IV should be dismissed.

against the Plaintiff, disseminating said affidavit to public, threatening prosecution of the plaintiff and actually filing criminal charges against one of the people named in the affidavit . . . [and] unlawfully search[ing] her house and confiscat[ing] all computer equipment, without probable cause or reasonable basis to believe that Richter had done anything other than exercise her First Amendment right to publicly criticize his performance as a prosecutor.

Doc. No. 6 at ¶¶ 66-67. Smith argues that he is entitled to absolute or qualified immunity on Count I because he had probable cause to investigate Richter for witness tampering.

### 1.    *First Amendment Retaliation*

"Criticism of public officials lies at the very core of speech protected by the First Amendment. Retaliation by a government actor in response to such an exercise of First Amendment rights forms a basis for § 1983 liability." *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002) (internal quotations omitted). To establish such a claim, a plaintiff must prove (1) he or she engaged in a protected activity, (2) the defendant responded with adverse action that would "chill a person of ordinary firmness" from continuing in the activity, and (3) that "the adverse action was motivated at least in part by the exercise of the protected activity." *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799 (8th Cir. 2012).

A plaintiff claiming First Amendment retaliation in the form of retaliatory prosecution must allege (and prove) that there was an absence of probable cause to support the prosecution. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006). "Probable cause exists if at the moment [the prosecutor acted], 'the facts and circumstances within [the prosecutor's] knowledge and of which [the prosecutor] had reasonably trustworthy information were sufficient to warrant a prudent man in believing'" that the plaintiff had violated a criminal statute or ordinance. *Williams v. City of Carl Junction*, 480 F.3d 871, 877 (8th Cir. 2007) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

## 2. *Fourth and Fourteenth Amendment Violations*

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. It is applicable to state actors by virtue of the Fourteenth Amendment. *United States v. Hallam*, 407 F.3d 942, 945 (8th Cir. 2005).

"Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Palega*, 556 U.S. 709, 714 (internal quotation omitted)). "A totality of the circumstances test is used to determine whether probable cause exists." *United States v. Gleich*, 397 F.3d 608, 312 (8th Cir. 2005). "Courts should apply a common-sense approach and, considering all relevant circumstances, determine whether probable cause exists." *Id*. "A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment and subjects the officer who submitted the affidavit to § 1983 liability." *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996) (quoting *Franks*, 438 U.S. at 171). Similarly, "[o]missions . . . can vitiate a warrant." *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004). As with Richter's claim under the First Amendment, this claim depends on the existence or absence of probable cause.

## 3. *Immunities*

Smith argues that he is entitled to qualified immunity on Count I because his investigation was supported by probable cause that Richter had committed the crime of witness tampering under Iowa Code § 720.4, and because his alleged actions under Count I are prosecutorial in nature and subject to absolute immunity. As an initial matter, I note that neither qualified nor absolute immunity apply to requests for declaratory and injunctive relief. Thus, Count I will not be dismissed in its entirety, regardless of whether Smith is entitled to immunity for money damages.

Smith contends that Richter used Ripoff Report to harass certain witnesses in retaliation for their testimony against Tracey. Iowa's witness tampering statute provides:

> A person . . . who, in retaliation for anything lawfully done by any witness or juror in any case, harasses such witness or juror, commits an aggravated misdemeanor.

Iowa Code § 720.4; *see also State v. LaPointe*, 418 N.W.2d 49, 51 (Iowa 1988). The elements of the "harassing in retaliation" charge are that "the defendant acts (1) without legitimate purpose, (2) with an intent to intimidate, annoy, or alarm the [witness or] juror, and (3) in retaliation for the [witness's or] juror's performance of his or her civic duty as a [witness or] juror on a case." *State v. Baker*, 688 N.W.2d 250, 253-54 (Iowa 2004). In *Baker*, the Court held that even if the conduct at issue includes speech, that conduct is not protected by the First Amendment if these elements are established. *Id.* at 254 (citing cases).

In his motion to dismiss, Smith does not argue that he had probable cause to investigate Richter's property for evidence of harassing a witness. Instead, he points to supposed shortcomings in Richter's complaint. However, I find that Richter plausibly alleges that there was no probable cause to support the warrant. Specifically, she states that Smith "adopt[ed] as his own, without any fact checking, a search warrant affidavit drafted primarily by a third party with a personal vendetta against [her]." Doc. No. 6 at ¶ 66, *see also id.* at ¶ 57 ("Smith testified that he used information verbatim provided to him by Roberts in the Search Warrant without verifying the factual basis of the information provided by Roberts."). Allowing an interested witness and non-government actor with a vendetta against the subject to draft substantial portions of the warrant and omitting that information from the warrant itself undermines the validity of the warrant such that it may probable cause. It is clearly established that seizing property, in the absence of probable cause and in retaliation for protected speech, violates the First, Fourth and Fourteenth Amendments. Construing disputed facts in Richter's favor, Smith is not entitled to qualified immunity for the allegations of Count I.

Nor is he entitled to prosecutorial immunity.  The allegations in Count I depend on several distinct acts:

1.	adopting a search warrant affidavit drafted primarily by Roberts,

2.	disseminating said affidavit to the public,

3.	threatening prosecution against Anna, and

4.	unlawfully searching and confiscating property without probable cause.

Doc. No. 6 at ¶¶ 66-67.  Prosecutors are not entitled to absolute immunity for their actions in drafting a search warrant affidavit as a witness, *Kalina*, 522 U.S. at 128-29, nor are they entitled to absolute immunity for purely investigative actions such as searching and confiscating property.  *Buckley*, 509 U.S. at 273-74.

Smith claims that he is entitled to absolute immunity for "disseminating" the search warrant and affidavit because, as he characterizes the events, "*filing* the search warrant application and affidavit" on the court's electronic filing system are prosecutorial functions.  Doc. No. 28-1 at 19 (emphasis added, citing *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("[P]reparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government.")).  However, Richter does not contend that Smith *merely* filed the search warrant by placing it in the Court's electronic filing system.  Instead, the complaint alleges that the warrant was "disseminat[ed] to the public" and "made public and circulated online."  Doc. No. 6 at ¶¶ 56, 66.  Smith testified that the application and affidavit were so publicized 'to incite electronic communication between Mead and Magedson, whose electronic communication he subsequently subpoenaed."  *Id.* at ¶ 56.  Smith does not cite any authority for the proposition that such activities are "intimately associated with the judicial process," *Anderson v. Larson*, 327 F.3d 762, 768. (8th Cir. 2003), nor does he explain how these activities indicate he was performing "advocacy on behalf of the government," *Schenk*, 461 F.3d at 1046.  Smith is not entitled to prosecutorial immunity for disseminating the warrant affidavit.

Finally, although "threatening criminal prosecution is within the scope of absolute immunity," *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir.), *cert. denied*, 484 U.S. 828 (1987), that conclusion does not compel a dismissal on Count I. As stated above, absolute immunity bars recovery of money damages only. Richter also seeks declaratory and injunctive relief to prevent Smith from continuing his retaliatory investigation against her. Assuming this case proceeds to a final decision on the merits, Smith's ability to continue threatening prosecution will be relevant to the resolution of this case. Therefore, Smith's motion as to Count I will be denied.

## C.     Count II

In Count II, Richter alleges that Smith violated the Fourteenth Amendment by instituting legal proceedings against her without probable cause and for improper purposes. Doc. No. 6 at ¶¶ 69-73. Smith argues that Count II fails to state a claim because there is no recognized constitutional violation for abuse of process.

The Eighth Circuit Court of Appeals has rejected freestanding "abuse of process" claims brought under § 1983:

> Section 1983 only provides a remedy for violations of rights expressly secured by federal statutes or the Constitution. *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980); *McNees v. City of Mountain Home*, 993 F.2d 1359, 1361 (8th Cir. 1993) (claim for malicious prosecution is not cognizable under § 1983 because it does not allege a constitutional or federal statutory injury). The Constitution does not mention malicious prosecution nor do plaintiffs cite a basis for a federal action for malicious prosecution. Moreover, this court has uniformly held that malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury. *Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 1990). Thus, plaintiffs' allegation of malicious prosecution cannot sustain a civil rights claim under § 1983.

*Kurtz v. City of Shresbury*, 245 F.3d 753, 758 (8th Cir. 2001); *see also Bates v. Hadden*, 576 Fed. Appx. 636, 639 (8th Cir. 2014) ("Our precedents dictate that [defendant] is entitled to qualified immunity as to [plaintiff's] malicious prosecution claim. No

'reasonable officials acting in [defendant's] position would . . . have understood they were violating' [plaintiff's] constitutional right against malicious prosecution because no such constitutional right had been clearly established.").

Richter argues that Count II nevertheless states a claim because she pairs her abuse of process claim with her First Amendment retaliation claim. *See* Doc. No. 6 at ¶ 72 ("Smith instituted these legal processes without probable cause and for improper purposes . . . to suppress speech critical of his actions, and to continue and further his campaign of retaliation against Plaintiff."). There is some support outside of the Eighth Circuit that "[a]n action for malicious prosecution may be brought under [§] 1983 if, acting under color of state law, the defendant has subjected the plaintiff to a deprivation of constitutional magnitude." *Hampton v. Hanrahan*, 600 F.2d 600, 630 (7th Cir. 1979), *rev'd on other grounds*, 466 U.S. 754 (1980). However, the Eighth Circuit's holding in *Kurtz* does not acknowledge any exceptions. As a result, Count II does not state a claim under § 1983 and must be dismissed.

## D. *Count III*

In Count III, Richter makes a state law malicious prosecution claim. She alleges that Smith lacked probable cause to apply for a search warrant for her home, that he had an improper basis for issuing the warrant and that she has suffered damage as a result. Smith argues that Richter has failed to state a claim for malicious prosecution under state law because she has failed to plausibly allege (1) that the warrant was invalid[6] and (2) that the allegedly wrongful proceedings terminated in her favor.

The elements of malicious prosecution under Iowa law are:

(1) a previous prosecution; (2) instigation of that prosecution by the defendant; (3) termination of that prosecution by acquittal or discharge of the plaintiff; (4) want of probable cause; (5) malice on the part of the

---

[6] My prior finding that Richter has plausibly pleaded that the warrant lacked probable cause controls my finding on the first part of Smith's argument.

defendant for bringing the prosecution; and (6) damage to the plaintiff. This damage to the plaintiff must be for an arrest of the person, seizure of property or special injury – injury that would not ordinarily result in all similar cases involving such a claim.

*Whalen v. Connelly*, 621 N.W.2d 681, 687-88 (Iowa 2000). The issue is whether Richter has plausibly plead a "previous prosecution" and "favorable termination." Richter argues that prosecution was commenced by filing the search warrant, and that the favorable termination element does not apply because "the search warrant was executed, thereby extinguishing [her] ability to have the case resolved in her favor." Doc. No. 29 at 18.

Richter has failed to establish that filing and executing a search warrant constitutes a "prior prosecution." "Ordinarily, the filing of a criminal complaint is the instigation of criminal charges." *Winckel v. Von Maur, Inc.*, 652 N.W.2d 453, 460 (Iowa 2002), *abrogated on other grounds in Barcera v. Nickolas*, 683 N.W.2d 111 (Iowa 2004). Iowa relies on the Restatement (Second) of Torts in defining this element. *Id.* According to the Restatement:

(1)     The term "criminal proceedings" includes any proceeding in which a government seeks to prosecute a person for an offense and to impose upon him a penalty of a criminal character.

(2)     Criminal proceedings are instituted when

(a)     process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for a later determination of his guilt or innocence; or

(b)     without the issuance of process an indictment is returned or an information filed against him; or

(c)     he is lawfully arrested on a criminal charge.

Restatement (Second) of Torts § 654 (1977).

Critically, a search warrant is not a "proceeding in which a government seeks to prosecute a person for an offense" or "to impose upon him a penalty of a criminal character." Instead, a search warrant merely authorizes search for and seize of property

which is evidence of a crime.  The search warrant at issue in this case did not authorize Richter's arrest, and she was never arrested in connection with this investigation.  No indictment, information, criminal complaint or any other kind of charging instrument was ever filed against Richter, and she was not brought before court to defend herself against accusations of any crime.  In the absence of a "prior prosecution," Count III fails to state a claim for which relief can be granted.  Count III must be dismissed.

## VI.    CONCLUSION

For the foregoing reasons, defendant Ben Smith's motion (Doc. No. 28) for judgment on the pleadings is **granted in part** and **denied in part**.  Specifically:

1.    The motion is **denied** as to Count I, except that Smith is entitled to absolute immunity with regard to the allegation that he threatened Richter with prosecution.

2.    The motion is **granted** as to Counts II and III.  Those counts are hereby **dismissed**.

This case shall proceed to trial on Counts I and IV as scheduled, beginning on February 19, 2019.

**IT IS SO ORDERED.**

**DATED** this 21st day of December, 2018.

_____
Leonard T. Strand, Chief Judge

18